Mark Mausert
NV Bar No. 2398
729 Evans Avenue
Reno, NV 89512
(775) 786-5477
Fax (775) 786-9658
mark@markmausertlaw.com
*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| EMILY HARVILL, | Case No.: |
| Plaintiff, | |
| vs. | **COMPLAINT AND JURY DEMAND** |
| TM&KKH, INC., dba MICHAEL HOHL HONDA, | |
| Defendant. | |
| _____/ | |

COMES NOW plaintiff, through counsel, and hereby complains of defendant as follows:

Jurisdiction, Venue & Jury Demand

1. Plaintiff is a woman, who is a resident of northern Nevada and who commenced working for defendant in December, 2016, and who left the employ on approximately October 2, 2019. Plaintiff was involuntarily terminated, i.e., fired. All, or almost all, acts, statements and omissions herein alleged occurred in northern Nevada, i.e., in Carson City, Nevada where at plaintiff was employed by defendant. Plaintiff has obtained a Notice of Right to Sue from the Equal Employment Opportunity Commission. A copy of that Notice of Right to Sue accompanies this Complaint and Jury Demand and is incorporated herein. This Complaint and Jury Demand is timely filed in accord therewith. Plaintiff hereby requests a jury trial re those

issues so triable.

2. Defendant TM&KKH, INC., dba Michael Hohl Honda (hereinafter "Hohl") is a corporation, limited partnership, limited liability company, partnership, or some other legal entity which previously employed plaintiff in northern Nevada. At all times herein mentioned defendant had at least fifteen employees working at least twenty weeks per year.

3. This Court has subject matter jurisdiction over this case per 28 U.S.C. 1343. The Court has subject matter jurisdiction because plaintiff is a woman who is alleging she was subject to a hostile work environment "because of sex", in violation of 42 U.S.C. 2000e, et seq. Plaintiff was subject to retaliation because she opposed sexual harassment and/or as a direct and proximate result of being subject to relentless and egregious sexual harassment which a reasonable woman, similarly situated, would not have tolerated.

4. This Court has venue re this action pursuant to 42 U.S.C. 2000e-5(f)(3) because all, or almost all of the actions, statements and omissions which form the basis for this lawsuit occurred in northern Nevada, i.e., in the geographical area of this judicial District.

First Cause of Action

(Sexual Harassment/Sexually Hostile Work Environment)

5. Plaintiff hereby incorporates the allegations of paragraphs 1 through 4, inclusive, as well as all other paragraphs herein, as though the same had been fully stated.

6. Plaintiff commenced employment with defendant Hohl in the capacity of an Automobile Sales Representative. In approximately June, 2017, plaintiff's superior, Sales Manager Patrick Miliano, commenced a course of sexual harassment directed at plaintiff. Manager Miliano repeatedly, loudly and in the presence of customers and other employees and Managers, made insulting remarks about plaintiff's physical appearance. These remarks were varied and Miliano appeared to indulge in them in order to embarrass plaintiff in front of others. For example, he told plaintiff she had a "potato butt"; wore too much makeup; wore too little makeup; was overweight; etc. Miliano used gender-oriented, pejorative profanity against

plaintiff and other females.  That is, he referred to plaintiff and other women as "bitches", "cunts", etc.  Sales Manager Miliano engaged in this conduct openly, in the presence of other employees and Managers and thereby cajoled other employees to join in and use such gender-oriented pejorative terms towards plaintiff and other women, and in the presence of plaintiff and other women, and defendant's other Managers.  Defendants employees, e.g., male sales personnel openly passed around sexually explicit photographs.  Miliano made varied and numerous offensive sexual remarks to and about plaintiff, e.g., he said of plaintiff and her boyfriend, "I bet they fuck all night and do coke", and otherwise encouraged other male employees of defendant Honda to disrespect plaintiff and subject her to sexual harassment.  One male employee Miliano directed such statements to was Mr. Roque David Samarron.  Mr. Samarron's "Declaration Under Penalty of Perjury" accompanies this Complaint and Jury Demand and is incorporated herein.

      7. Plaintiff complained to Hohl's General Manager of Miliano's conduct, but that conduct continued.  In response to plaintiff's complaint, and at least one complaint made by another employee on plaintiff's behalf to the General Manager of Miliano's conduct, Miliano intensified the sexual harassment.  At one point, in response to plaintiff having complained, Miliano grabbed plaintiff by her throat and exerted pressure to intimidate.

      8. Miliano and other Hohl employees openly played obscene rap music on the premises.  For instance, Miliano and other male employees played songs such as "Blowjob Betty", by "Too Short".  Such songs have graphically obscene lyrics and are often violently misogynistic as well, e.g., they depict violence against women.  Women are frequently referred to with sexually pejorative and/or gender pejorative terms. These songs were played openly and loudly and in the presence of defendant Hohl's General Manager and other Managers – who failed to take any reasonable remedial action re the playing of such songs and/or the sexual harassment to which plaintiff and other female employees were subjected.  A reasonable woman, similarly situated to plaintiff, would have been very offended by the rap music

defendant allowed to permeate its working environment, and by the other sexual remarks and harassment described herein.  Plaintiff herself was offended.  By allowing the playing of graphically obscene and misogynistic rap music, defendant Hohl repudiated the written policy it claimed to have, and promised plaintiff would be enforced.  Defendant Hohl also discouraged victims of sexual harassment from complaining, i.e., the message implicitly communicated via allowing openly obscene and misogynistic music to permeate the work place was that the written policy was meaningless and the real, de facto policy, countenanced whole sexual denigration of women.  Complaints were thereby strongly discouraged.  Further, defendant Hohl is estopped from successfully asserting the *Ellerth/Faragher* affirmative defense.

      9. Miliano engaged in other offensive conduct, e.g., he touched plaintiff in an overly familiar and sexually offensive manner, e.g., he grabbed her around her waist.

      10. Miliano conjured a number of inventive ways to sexually harass plaintiff.  For instance, he defaced plaintiff's Driver's License by writing "Hooker Pass" on it.  Miliano wrote "Bitch" on plaintiff's Driver's License.  He also drew a picture of an ejaculating penis and directed it at plaintiff's mouth.  On the back of plaintiff's Driver's License Miliano wrote "Supreme Hooker Club".  He defaced plaintiff's vehicle by writing, "I love black cock" on it.  Photographs of Miliano's abusive and harassing handiwork accompany this Complaint and Jury Demand and are incorporated herein.  Miliano openly speculated on how many people he believed plaintiff may have had sex with.  Miliano engaged in a varied, frequent repertoire of sexual and gender-based harassment and at times morphed his sexual hostility into outright hostility, culminating in plaintiff's termination of employment.

      11. Plaintiff also complained to Hohl's Sales Manager Autumn Smith.

      12. Miliano morphed his sexual animus and retaliatory animus into outright derision.  For instance, he openly told plaintiff, in September, 2019, to "shut the fuck up" in the presence of a number of other employees.

      13. As a direct and proximate result of the sexual harassment plaintiff was subjected to

by Sales Manager Miliano, but also by other male employees of defendant, plaintiff suffered emotional distress, loss of enjoyment of life, fear, anxiety, apprehension of physical harm, pain and physical suffering, humiliation, and varied physical symptoms.  Plaintiff, by virtue of past experiences, was especially susceptible to suffering intensely as the result of sexual harassment.

14. Defendant failed to implement adequate remedial action, despite being aware of the sexual hostility which permeated its working environment.  Defendant was aware of this hostility because, for instance, male employees loudly played graphically obscene rap music on a regular basis within easy earshot of defendant's managers; much of the sexual harassment was openly and loudly perpetrated; plaintiff's vehicle was defaced with a sexual statement and Miliano, who admitted to defacing the vehicle, did so in a manner whereby what he wrote was plainly visible; plaintiff complained to several Managers; and at least one other employee complained.

15. Any diminution and/or deficiency in plaintiff's work performance was directly and proximately caused by the rampant sexual/gender hostility defendant allowed to exist in its work environment and defendant is therefore estopped by relying on such as a basis for justifying the termination of plaintiff's employment.

16. At point, approximately in the summer of 2019, Sales Manager Miliano's "mere presence" came to constitute an actionably hostile work environment for plaintiff. Defendant aggravated this situation by continuing to allow Miliano to exercise supervisory authority over plaintiff, notwithstanding knowledge of Miliano's extraordinary abusive and sexually hostile course of conduct which he routinely directed at plaintiff.

17. On or about October 2, 2019, Miliano terminated plaintiff's employment, i.e., he informed plaintiff she was discharged and presented her with a resignation form to sign. Plaintiff signed because she was afraid of Miliano and because she was afraid to continue to work in such an environment.  If plaintiff is deemed to have resigned, as opposed to having

been fired, her resignation should be deemed a wrongful constructive discharge. That is, any reasonable woman, in plaintiff's situation, would have felt compelled to resign because of the intolerable sexual/gender hostility and retaliatory hostility which defendant permitted to develop and exist.

18. It has been necessary for plaintiff to incur costs and retain counsel in order to attempt to vindicate her federally protected right to a workplace free of sexual hostility and/or retaliation.

## Second Cause of Action

(Retaliation)

19. Plaintiff hereby incorporates the allegations of paragraphs 1 through 18, inclusive, as though the same were full stated herein.

20. Some of the conduct defendant engaged in, including the termination of plaintiff's employment, constituted retaliation, as prohibited by 42 U.S.C. 2000e, et seq. That is, the termination of plaintiff's employment constituted retaliation, regardless whether plaintiff is deemed to have been involuntarily discharged or been subject to a wrongful constructive discharge. A constructive discharge is a recognized form of retaliation per Title VII, i.e., Title VII of the 1964 Civil Rights Act. The conduct of Manager Patrick Miliano had a deleterious affect upon plaintiff's morale, and upon plaintiff's attitude toward Miliano. Any outburst, e.g., pejorative language, which plaintiff directed at Miliano was directly and proximately caused by the protracted and relentless course of sexual harassment Miliano subjected plaintiff to. That is, any such outburst constituted opposition to Miliano's sexual harassment and defendant was precluded from taking adverse action in response thereto. Defendant Hohl did take adverse action and fired plaintiff because she opposed Miliano's sexual harassment.

21. As a direct and proximate result of being subject to retaliation, plaintiff has been injured and damaged as described herein. Further, plaintiff has suffered economic damage. It

has been necessary for plaintiff to incur costs and hire counsel in order to attempt to vindicate her federally protected right to be free of retaliation.

WHEREFORE, plaintiff requests the following relief:

1. For an award of compensatory damages;

2. For an award of punitive damages sufficient to punish and deter defendant from engaging in similar conduct;

3. For an award of special or actual economic damages, according to proof;

4. For an award of costs and a reasonable attorney's fee; and

5. For injunctive relief to compel defendant Honda to adopt and actually enforce a reasonable policy against sexual harassment and/or retaliation, and for whatever other relief the Court or jury may deem just.

DATED this 6th day of August, 2020.

/s/ Mark Mausert
Mark Mausert
NV Bar No. 2398
729 Evans Avenue
Reno, NV 89512
TELEPHONE:(775) 786-5477
FACSIMILE: (775) 786-9658
*Attorney for Plaintiff*

**INDEX OF EXHIBITS**

Notice of Right to Sue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 1

Declaration of Roque David Samarron. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Exhibit 2